IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

RHONDA GAIL MORRIS                                                      PLAINTIFF

V.                                                     CIVIL ACTION NO. 1:14-CV-136-SA-DAS

DERRICK YOUNG,
WAL-MART STORES EAST, L.P., and
STEVEN LANE                                                          DEFENDANTS

MEMORANDUM OPINION

Plaintiff Rhonda Gail Morris commenced this action, alleging age discrimination against her former employer Wal-Mart Stores East, L.P., and tortious interference with contract against one of her supervisors Derrick Young and a Wal-Mart customer Steven Lane. Wal-Mart and Young filed the pending Motion for Summary Judgment [93], which the Court resolves as follows:

*Facts and Procedural History*

Morris worked as a sales associate and customer service manager at the West Main Street Wal-Mart in Tupelo for nearly eight years before she was terminated after allegedly committing multiple disciplinary infractions. At the time of her termination, Morris was fifty-three years old.

Pursuant to Wal-Mart's disciplinary "Coaching for Improvement" policy, an employee may receive three levels of discipline or "coaching"—first written coaching, second written coaching, and third written coaching. When an employee receives a coaching, if she already has an "active coaching" on her record, meaning it occurred within the last year, then the new coaching is issued at the level higher than the existing active coaching. An employee who has an active third written coaching is subject to termination if she receives additional discipline.

In June 2012, Morris received her first written coaching for cashing a check and then mistakenly handing the check and cash back to the customer. Morris brought the mistake to a manager's attention, and she does not dispute that disciplinary action was warranted.

Morris received a second written coaching in December of the same year for failing to respond quickly enough to long checkout lines. Morris took issue with this coaching, explaining that the store was busy, too few staff members were available, and she was doing the best she could under the circumstances.

Wal-Mart issued a third written coaching to Morris in October 2013 for failing to complete ten cash register audits per day, as each customer service manager was required to do. Morris disputes this third coaching. She claims that the customer service managers misunderstood the audit-requirement, believing that the managers' audits could be aggregated to reach the required number. Indeed, every customer service manager at the West Main Street Wal-Mart received a coaching for failing to complete the required audits.

The final incident, in April 2014, resulted in Morris' termination. Customer Steven Lane attempted to return a vacuum cleaner. According to Morris, the store co-manager Brenda McMillen had instructed Morris and the other customer service managers to refuse attempted returns by Lane unless he presented a receipt, as he had caused problems in the past. Thus, when Lane approached the return counter without a receipt in April 2014, Morris halted the return and radioed for McMillen and an associate in asset protection, but neither responded. Assistant manager Derrick Young, then age twenty-four, responded over the radio. Morris testified that she told Young "hey, the customer that y'all told us to let y'all know if he come in here, he's up here[,]" and that Young responded, "without a receipt, don't let him have it." Young testified that Morris represented over the radio that Lane had returned three items in the previous two

weeks, the most allowable under Wal-Mart's Returns and Exchanges Policy. Morris denies that she communicated a number of returns by Lane.

Lane then became upset at Morris, and Young went to the returns area to resolve the dispute. He keyed Lane's driver's license number into Wal-Mart's computer system, which showed that Lane had only returned one item without a receipt that year. Lane's return was processed, but he remained very upset. According to Morris, Lane stated that Morris should be fired, and Young responded "don't you worry sir. I'm fixing to take care of her right now."

Later that day, Lane called co-manager Justin Copeland and made further complaint against Morris for refusing his return. Lane testified that Young urged him to make this complaint. Young denies that he did so. Copeland convened a meeting with Young, McMillen, and another manager, and determined that Morris should receive another disciplinary coaching. As Young was processing the coaching in the computer, Wal-Mart's system automatically triggered the exit-interview screen, and the managers decided they had no choice but to terminate Morris.

Following her termination, Morris filed an EEOC charge, received her right-to-sue letter, and then commenced this suit, alleging age discrimination against Wal-Mart in violation of the ADEA and tortious interference with contract against her manager, Young, and the customer, Lane. The Clerk of Court has entered a default against Lane. Wal-Mart and Young have requested summary judgment in their favor on all Morris' claims.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

**Age Discrimination**

The ADEA prohibits an employer from discharging an employee because of her age. 29 U.S.C. § 623(a)(1). To prove discriminatory termination, Morris must show that but for the alleged discrimination, she would not have been terminated. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). Because Morris seeks to establish her claim with circumstantial evidence only, the Court utilizes the familiar *McDonnell Douglas*

4

burden-shifting evidentiary framework. *Miller v. Raython Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)) (other citation omitted).

Within the *McDonnell Douglas* contours, Morris must first establish a prima facie case of age discrimination, "at which point, the burden shifts to [Wal-Mart] to articulate a legitimate non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If Wal-Mart meets its burden of production, Morris must introduce evidence from which a jury could infer that Wal-Mart's reason is not true, but instead a pretext for discrimination, or that even if Wal-Mart's reason is true, Morris was terminated because of her age. *Miller*, 716 F.3d at 144 (citing *Gross*, 557 U.S. at 180, 129 S. Ct. 2343).

To establish a prima facie case of discriminatory termination under the ADEA, Morris must demonstrate that she: (1) was discharged, (2) was qualified for the position held, (3) was age forty or older, and (4) was either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of her age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). Wal-Mart does not contest Morris' prima facie case for summary judgment purposes, and thus the Court considers it established.

Therefore, the burden shifts to Wal-Mart to provide a legitimate non-discriminatory reason for terminating Morris. *Berquist*, 500 F.3d at 349. Wal-Mart need not "persuade the court that it was actually motivated by the proffered reasons." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). It must only "clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." *Id*. Wal-Mart contends that it terminated Morris for exceeding the allowable number of coachings under its

5

Coaching for Improvement Policy. Specifically with regard to the April 2014 incident, Wal-Mart asserts that Morris failed to follow Wal-Mart's Return and Exchange Policy by refusing a return without first verifying the number of Lane's previous recent returns without receipts. Wal-Mart's asserted reason is supported by deposition testimony from various managers and by Morris' exit-interview documentation. Thus, the Court finds that Wal-Mart has discharged its obligation of producing a legitimate non-discriminatory reason.

Accordingly, the burden shifts to Morris to show that Wal-Mart's proffered reason is merely pretextual, or that even if true, her age was nonetheless the but-for cause of her termination. *Miller*, 716 F.3d at 144 (citation omitted). She may demonstrate pretext by showing that "the employer's proffered explanation is false or 'unworthy of credence'" or by producing other "evidence of disparate treatment . . . ." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)). Morris has presented both types of evidence here.

As discussed above, Morris testified that Young instructed her to refuse Lane's attempted return, and that she was disciplined for doing just that. Morris explained that Lane requested her termination, and that Young responded "don't you worry sir. I'm fixing to take care of her right now." And according to Lane, his complaint to co-manager Copeland was only made at Young's behest. This evidence creates a question of fact as to whether Wal-Mart's asserted reason is "false or 'unworthy of credence.'" *Moss*, 610 F.3d at 922 (internal citation and quotation omitted).

Morris has additionally presented evidence of Young treating older employees differently than younger employees. *See id*. Morris testified that Young belittled her, rarely otherwise talked to her or older associates, and consistently chatted and laughed with younger associates. This

sentiment was echoed by four other Wal-Mart employees, who acknowledged by deposition that Young was friendlier to the younger Wal-Mart staff, especially the females.

In a more concrete example of differential treatment, Morris testified that Young reprimanded her for allowing checkout lines to back up. Young allegedly stated that he would admonish all customer service managers, but he only discussed the issue with Morris and Brenda Underwood, another manager over forty. Young did not rebuke any of the younger customer service managers, according to Morris.

For these reasons and based on a review of the record on the whole, the Court finds that Morris has produced sufficient evidence that Wal-Mart's reason for her termination was pretextual. Summary judgment is unwarranted on her ADEA claim.

**Tortious Interference with Contract**

Morris also pursues a claim against Young for tortious interference with contract. To establish her claim, she must prove the following:

> (1) that [Young's] acts were intentional and willful; (2) that they were calculated to cause damage to [Morris] in [her] lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of [Young] (which constitutes malice); and (4) that actual damage and loss resulted.

*Coleman & Coleman Enters., Inc. v. Waller Funeral Home*, 106 So. 3d 309, 315-16 (Miss. 2012) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)). Morris must also show that she and Wal-Mart shared an enforceable obligation that would have been performed if not for the alleged interference by Young. *Id.* The Mississippi Supreme Court has held that tortious interference with an at-will employment relationship is actionable. *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999).

7

Young advances three primary arguments for summary judgment on Morris' tortious interference claim. He first contends that he never intended to terminate Morris, but only to issue her a coaching. His position is, however, in dispute. At a minimum, the alleged statement by Young that he was going to "take care of" Morris, made directly after Lane allegedly requested her termination, creates a question of fact as to Young's intent. Further, the claim of tortious interference does not require an intention to terminate, but merely an intention to *interfere* with employment. *See Wertz v. Ingalls Shipbuilding Inc.*, 790 So. 2d 841, 845-46 (Miss. Ct. App. 2000) (finding jury question on tortious interference claim when plaintiff's former employer and shipyard would not permit him to work for subcontractor on its premises, resulting in his termination by the subcontractor). The decision to issue a coaching which could result in termination—and in this case did—constitutes a potentially actionable interference.

Young further asserts that the decision to terminate an employee based on the demand of another party (here Lane) does not rise to the level of tortious interference with contract, citing *Southern Health Corporation of Houston v. Crausby*, 174 So. 3d 916, 921 (Miss. Ct. App. 2015). There, a hospital acquiesced to a doctor who threatened to cease admissions to the hospital unless it terminated a particular nurse. *Id*. The Mississippi Court of Appeals explained that by terminating the nurse, the hospital was acting for its own economic advantage, and not "with the unlawful purpose of causing damage and loss, without right or justifiable cause." *Id*. But the gist of Morris' claim, unlike the claim in *Crausby*, is that Young allegedly caused her termination because of her age, not in order to further his or Wal-Mart's economic interests. *Crausby* is therefore inapposite.

In a similar vein, Young claims that his actions were privileged based on his supervisorial role over Morris. Indeed, "one occupying a position of responsibility on behalf of another is

8

privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with that third person." *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So. 2d 567, 574 (Miss. Ct. App. 2001) (citing *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985)). To defeat the privilege by showing bad faith, Morris may rely on direct evidence, or as is more often the case, circumstantial evidence that Young "was malicious or recklessly disregarding" Morris' rights. *Id*. at 575.

The question of bad faith is resolved on substantially the same evidence as Morris' ADEA claim. Young allegedly told Morris not to allow Lane to return the vacuum cleaner. He then reversed his decision and, according to Lane, urged Lane to lodge a complaint. This course of conduct and the other evidence of Young's preferential treatment for younger employees creates a genuine factual issue as to bad faith and as to whether Young's actions were privileged.

In accord with this conclusion, courts have typically found a jury question on bad faith when there is otherwise evidence to support a claim for unlawful termination initiated by the plaintiff's supervisor. *See King v. Bd. of Trustees of State Institutions of Higher Learning of Miss.*, No. 3:11-CV-403-CWR, 2014 WL 1276477, at *14 (S.D. Miss. Mar. 27, 2014) (holding evidence of race discrimination sufficient to demonstrate bad faith on tortious interference of contract claim); *Gillespie v. City of Macon, Miss.*, 485 F. Supp. 2d 722, 731 (S.D. Miss. 2007) (finding question of fact on supervisorial privilege in view of evidence that mayor's conduct constituted political retaliation in violation of First Amendment); *see also Wright v. KIPP Reach Acad. Charter Sch.*, No. 10-CV-989-D, 2011 WL 1752248, at *4 (W.D. Okla. May 6, 2011) ("Where the alleged contract interference is based on the claim that the interfering employee engaged in unlawful discrimination, he may be liable for tortious interference because such conduct would constitute bad faith.").

For the foregoing reasons, the Court finds that summary judgment is not warranted on Morris' claim against Young for intentional interference with contract.

*Conclusion*

Defendants' Motion for Summary Judgment [93] is DENIED. Morris has presented sufficient evidence to create a question of fact as to whether Wal-Mart terminated her because of her age and whether Young tortiously interfered with her employment. A separate order to this effect shall issue this day.

SO ORDERED, this 3rd day of May, 2016.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**